MEYER SCHWACHMAN, Plaintiff-Appellee, *v.* GREENBAUM MORT-GAGE COMPANY *et al.*, Defendants.—(Continental Illinois Realty, Defendant-Appellant.)

First District (4th Division)   No. 81—2741

Opinion filed March 10, 1983.—Rehearing denied June 30, 1983.

Arnstein, Gluck & Lehr, of Chicago (Michael R. Turoff and Arthur L. Klein, of counsel), for appellant.

Joseph L. Goldberg and Marshall Kaplan, both of Kaplan and Kaplan, of Chicago, for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, Meyer Schwachman, sued defendants, Continental Illinois Realty (CIR), Greenbaum Mortgage Company, Greenbaum Venture Corporation, and Greenbaum Equities Corporation, to recover damages for breach of a promise to provide mortgage loans to purchasers of condominium units in a building owned by Schwachman and his partners. All defendants were voluntarily dismissed except defendant-appellant, CIR. A jury trial resulted in a verdict for plaintiff in the amount of $111,000.

Defendant CIR filed a post-trial motion seeking judgment notwithstanding the verdict or in the alternative a new trial. That motion was denied and this appeal followed.

The issues presented for review are (1) whether plaintiff failed to

prove his case and his damages, thus, entitling defendant to a directed verdict; (2) whether the trial court erred in failing to require plaintiff to prove his case by clear and convincing evidence rather than a preponderance of the evidence; (3) whether the promise relied upon by plaintiff was enforceable; and (4) whether the trial court erred in failing to declare a mistrial after certain remarks by plaintiff's attorney.

In the fall of 1972, Meyer Schwachman and his partner, Harold Karp, both real estate developers, proposed the purchase of an apartment building located at 4200 North Marine Drive, in Chicago, for the purpose of condominium conversion. Schwachman and Karp sought help from Greenbaum Mortgage Company in finding a source of financing for the purchase of the building and subsequent end loans. "End loan" is the term used by the parties to describe subsequent mortgage loans to potential buyers of the condominium units.

Greenbaum Venture Corporation, a wholly owned subsidiary of Greenbaum Mortgage Company, was formed for the purpose of carrying out the condominium conversion project in partnership with plaintiff. Plaintiff and his partner, Harold Karp, then entered into a partnership with the newly formed Greenbaum Venture Corporation. Profits from the project were to be divided; 50% to Greenbaum Venture Corporation and 50% to plaintiff and Karp.

Through the efforts of Greenbaum Mortgage Company, plaintiff was introduced to Michael Bailie, a representative of defendant CIR. Defendant was a real estate investment entity that specialized in making short-term loans on real estate projects. Defendant was directed by a group of trustees in California, but Bailie conducted CIR's business out of a Chicago office. At trial, the parties disagreed as to whether Bailie had the authority to make commitments which were binding upon CIR or whether he was subject to the direction of the trustees for approval of his decisions.

On April 13, 1973, Bailie issued a commitment letter on behalf of CIR agreeing to lend up to $825,000 for two years to the partnership of Schwachman, Karp and Greenbaum Venture for the purchase and conversion of the building at 4200 North Marine Drive. Plaintiff and Karp testified that they told Bailie that they could not undertake the project without a firm commitment for end loan financing. They claim that Bailie promised that CIR would provide end loan financing if such financing could not be procured elsewhere. According to plaintiff, Bailie explained that CIR would provide the end loan financing via the "warehousing method." That method required defendant to loan the money to a third party, possibly a savings and loan association, who would in turn loan the money to the purchasers of the condominium

units. The third party would then refinance the loan and repay defendant within two or three years. Plaintiff testified that it was his understanding that Bailie had complete authority to act in defendant's behalf in making various loan commitment decisions. Therefore, plaintiff considered defendant bound by Bailie's promise to provide the end loan financing.

On April 25, 1973, a real estate purchase contract was signed for the purchase of the building. Closing was to take place on or before June 30, 1973. On June 11, 1973, the partnership of Schwachman, Karp and Greenbaum Venture received a letter from Uptown Federal Savings and Loan Association (Uptown), stating that it would entertain mortgage loan applications from *bona fide* purchasers of condominium units in the project. It appears that none of the parties involved in the project considered the letter to be a binding commitment on Uptown to provide end loan financing. The record is unclear, but it appears that plaintiff and his partners continued to seek a source of end loan financing after receiving the letter from Uptown and prior to the date set for closing the purchase contract.

Plaintiff and Karp testified that based on Bailie's promise that end loan financing would be made available by defendant, they entered into the mortgage loan agreement with defendant for $825,000 and finalized the purchase agreement for sale of the building in August 1973.

The Uptown letter was withdrawn two weeks after it was issued. Plaintiff claims that Bailie was told of the withdrawal when it occurred. Bailie claims that he first learned of the withdrawal sometime in 1974. By the middle of 1974 it became apparent that the project was unable to get a committed source of end loan financing. According to Bailie, it was at that time that he first discussed the warehousing method of end loan financing and not in April 1973, as plaintiff claims. Bailie claims to have sought permission from his superiors to "explore the possibility" of such financing. He denied making any promises to the plaintiff and his partners.

In August 1974, the trustees of defendant CIR notified Bailie that defendant could not commit itself to end loan financing of the project. This was communicated to plaintiff and his partners. No other source of financing was found, and the partnership was unable to sell the condominium units.

In late 1974, plaintiff and his partners deeded the building to defendant CIR in lieu of foreclosure. The building was later sold by defendant at what it claims was a loss of $474,000. Plaintiff claimed lost profits of $425,000 and out-of-pocket losses of $10,900. Prior to the institution of this lawsuit, Harold Karp assigned his interest in the

claim to Schwachman who proceeded as the sole plaintiff.

Defendant first argues that the trial court erred in failing to direct a verdict in response to its motion at the close of all the evidence. It argues that there was never any binding promise by Bailie to obtain end loan financing for the project. Defendant argues that the testimony of plaintiff and Harold Karp should be discredited as self-serving and controverted. Furthermore, under the standard of *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, the trial court is obligated to direct a verdict for defendant or, in the alternative, enter a judgment notwithstanding the verdict. Defendant also argues that plaintiff failed to prove damages and is not entitled to the amount awarded by the jury.

Both parties presented evidence on the question of whether Bailie had in fact promised that defendant CIR would provide end loan financing for the project if it could not be procured elsewhere. Plaintiff and Karp testified that they would not have proceeded with the purchase without the promise by Bailie. They claim they knew and made it clear to Bailie that the success of the project depended upon having an available source of end loan financing. Bailie denied giving any assurances regarding such financing. We believe the question of credibility underlies the resolution of this issue. The jury accepted plaintiff's evidence and rejected defendant's evidence. We will not disturb the jury's finding unless it is palpably contrary to the evidence. (*La Grange Metal Products v. Pettibone Mulliken Corp.* (1982), 106 Ill. App. 3d 1046, 1052, 436 N.E.2d 645, 650.) In the instant case, there was sufficient evidence from which the jury could find that Bailie had promised plaintiff and his partners that defendant would provide end loan financing. The fact that plaintiff and his partners had sought end loan financing from sources other than defendant does not abrogate the evidence which the jury accepted; specifically, that Bailie had made promises on behalf of defendant which were relied upon by plaintiff and his partners.

Defendant's citation of *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, as support for its argument does not strengthen its position. *Pedrick* has long been recognized as setting the standard in Illinois for granting a directed verdict or judgment notwithstanding the verdict. Verdicts are directed and judgments notwithstanding the verdict are entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the nonmovant, so overwhelmingly favors the movant that no contrary verdict based on that evidence could stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.

We do not find the *Pedrick* standard applicable to the instant case. Even if we assumed *Pedrick* to be applicable, the record does not reflect evidence which so overwhelmingly favors defendant's position as defendant vigorously asserts. Plaintiff and Karp told the jury of a promise by defendant's agent, which they relied upon. Bailie denied making such a promise. Both sides presented additional evidence in support of their respective positions. The jury accepted plaintiff's evidence as true. We find no reason to disturb the jury's verdict.

Defendant also argues that plaintiff failed to prove damages. According to defendant's reasoning, plaintiff cannot claim damages because the breach of promise placed plaintiff in the same position he would have been in had he not relied on Bailie's promise. We reject this argument.

Plaintiff presented evidence of his expenditure for converting the building into condominium units. It is uncontroverted that the project failed and that plaintiff never realized the expected profits from the sale of the units. The jury was instructed regarding the specific elements of damages which must be found in order for plaintiff to recover. The jury found from the evidence that the amount of plaintiff's lost profits could reasonably be ascertained. Accordingly, they made a finding in the amount of $111,000. This is considerably less than plaintiff sought. We cannot say that the jury's verdict was so manifestly against the weight of the evidence that all reasonably intelligent minds would have reached a different conclusion. (*Richard v. Illinois Bell Telephone Co.* (1978), 66 Ill. App. 3d 825, 839, 383 N.E.2d 1242, 1254.) The verdict will therefore be allowed to stand.

Defendant next argues that it was error for the trial court to require proof by a preponderance of the evidence rather than by clear and convincing evidence. It is defendant's contention that plaintiff's case rests on an oral modification of a written agreement and, therefore, a higher standard of proof is required. We do not agree.

First, defendant's argument that there was a written agreement which was later modified orally was made at trial and was rejected by the jury. Simply restating it here does not convert it to a proved fact. In order to accept defendant's argument, we must make a finding *de novo* that there was a written agreement which was orally modified. We note, however, that defendant did not prove that point at trial. We will not speculate on what issues and methods of proof should have been put before the trial court.

The standard of proof for a jury trial of a civil matter is a preponderance of the evidence. (*Spankroy v. Alesky* (1977), 45 Ill. App. 3d 432, 435, 359 N.E.2d 1078, 1080.) Defendant has advanced no compel-

ling reasons for departing from this long established standard. We find that the trial court correctly set the standard proof as a preponderance of the evidence.

Defendant next contends that the promise to provide end loan financing was unenforceable. In support of this contention, defendant argues that there was an oral modification of the mortgage loan agreement and such modification violates the statute of frauds. In the alternative, there was no consideration for defendant's promise to provide end loan financing; therefore, there was no binding agreement.

The jury found that defendant had made a promise to provide end loan financing and that plaintiff relied upon that promise. In our view, the basic and more complex issue is whether there was adequate consideration to make the offer and acceptance of a promise to provide end loan financing a legally binding contract.

Unfortunately, plaintiff's arguments provide little guidance for the court on this point. In one argument, plaintiff argues that there was no contract and in another argument he argues that there was. Nonetheless, this court recognizes its obligation to address this issue. Accordingly, we have searched the record to determine whether the evidence supports the finding by the trial court that there was a binding agreement and therefore adequate consideration must have existed.

Plaintiff's argument implies that there was adequate consideration since the offer of end loan financing induced him to enter into the separate mortgage loan agreement with defendant. Defendant claims that plaintiff was already obligated under the mortgage loan agreement and, thus, plaintiff may not claim as adequate consideration an act which he was already legally obligated to perform. We have therefore directed part of our inquiry toward the determination of when the mortgage loan agreement actually occurred.

The record indicates that although a commitment letter to provide a mortgage loan to plaintiff was issued by defendant on April 13, 1973, the actual consummation of the purchase agreement did not take place until sometime in August 1973. It appears that there were continuing negotiations between the parties involved during the period from April 1973 until the closing of the purchase agreement in August 1973. This was after the time of the promise by defendant to provide end loan financing. Prior to the consummation of the mortgage loan agreement there was no legally binding agreement. In fact, the record shows that the commitment of April 13, 1973, was in the form of a letter in which defendant offered to make the mortgage loan provided plaintiff met certain specified conditions, one of which was the procurement of end loan financing. The letter of April 13, 1973, was not a mortgage agree-

ment that was legally binding upon plaintiff. Therefore, the agreement to provide end loan financing must have occurred prior to the execution of the legally binding mortgage loan agreement in August 1973.

■ At the time of the promise to provide end loan financing, plaintiff had no legal obligation to defendant. All that existed between them was defendant's commitment to provide a mortgage loan to plaintiff provided plaintiff met a number of requirements, one of which was procuring end loan financing. Thus, to the extent that plaintiff agreed and did indeed enter into the mortgage loan agreement and thereby incurred serious legal obligations thereunder because of defendant's promise of end loan financing, there was adequate and important consideration given by plaintiff. To reach any other conclusion would require this court to find that the mortgage loan commitment letter became legally binding upon plaintiff while the parties were still in the process of negotiating. Such a conclusion is incompatible with the statute of frauds. Therefore, the promise to provide end loan financing was enforceable.

Defendant next takes issue with the trial court's failure to grant a mistrial upon defendant's motion. In support of this, defendant argues that on two occasions plaintiff's attorney made improper statements in front of the jury. The statements implied that defendant's attorney had failed to produce certain documents which had been requested by plaintiff's attorney. Defendant argues that the remarks were prejudicial and, therefore, a mistrial should have been granted. Defendant does not explain how the remarks prejudiced its position.

■ The record reveals a verbal exchange between the attorneys for both parties concerning production of certain documents. The prejudicial nature of the remarks is not apparent from a reading of the record and defendant has failed to articulate exactly how it was prejudiced by the remarks. We are not in a position to speculate as to what, if any, prejudice resulted from the remarks complained of. We agree with the trial court that the remarks do not rise to the level of prejudicial error and, therefore, defendant's motion for a mistrial was correctly denied.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

ROMITI, P.J., and JIGANTI, J., concur.