RICHARD T. YATES *et al.*, Plaintiffs-Appellees, v. DOCTOR'S ASSOCI-ATES, INC., *et al.*, Defendants-Appellants.

Fifth District   No. 5—89—0139

Opinion filed January 25, 1990.

Theodore J. MacDonald, Jr., of Burroughs, Simpson, Hepler, Broom & MacDonald, of Edwardsville, and Alan G. Gerson, of Blumenfeld, Sandweiss, Marx, Tureen, Ponfil & Kaskowitz, P.C., of Clayton, Missouri, for appellants.

David M. Duree, of O'Fallon, and Robert L. Carter, of Leritz, Reiner & Duree, P.C., of St. Louis, Missouri, for appellees.

JUSTICE HARRISON delivered the opinion of the court:

This is an interlocutory appeal pursuant to Supreme Court Rule 307(a)(1) (107 Ill. 2d R. 307(a)(1)) from an order of the circuit court of Madison County which denied defendants' motions to compel arbitration and to stay all judicial proceedings pending the conclusion of that arbitration. For the reasons which follow, we affirm.

The record before us shows that defendant Doctor's Associates, Inc., is a Connecticut corporation which sells franchises for the operation of "Subway" sandwich stores. In 1987, plaintiffs Richard T. Yates and Dick Dewayne Cox, Jr., purchased eight of these franchises. Each franchise entitled plaintiffs to operate one Subway sandwich store. Plaintiffs Yates and Cox initially used five of their franchises to open and operate five Subway sandwich stores in Madison and St. Clair Counties in Illinois. The remaining three franchises were held by Yates and Cox for future development.

Each of the eight franchises which Yates and Cox had purchased was governed by a separate franchise agreement, but the substantive terms of those agreements were the same. The agreements provided that plaintiffs were responsible for selecting the locations for their sandwich stores. Those locations were then subject to approval by defendant Doctor's Associates. If Doctor's Associates approved the proposed locations, either it or one of its designees would lease the premises and then sublet them to plaintiffs.

The franchise locations and leases for plaintiffs' five Illinois stores were approved by Doctor's Associates. Defendant Ted Parent was an employee of Doctor's Associates involved in its leasing operations, and the development agent appointed by Doctor's Associates for the franchise territory in which plaintiffs' stores were located was defendant Hossein Naemi. Naemi was also the president and sole director of defendant Subway Development Corporation of Eastern Missouri, and he would perform some of his responsibilities as Doctor's Associates' agent through that corporation. Defendant Frederick A. Deluca was the general manager of Doctor's Associates and was allegedly the individual who approved or disapproved "the franchises and their developments [sic] of 'Subway' Sandwich Shops."

The entity designated by Doctor's Associates to lease the premises for plaintiffs' stores was defendant Subway Sandwich Shops, Inc. (Subway, Inc.), and Subway, Inc., subleased the premises to plaintiffs pursuant to the terms of the franchise agreements. The subleases

were approved by Doctor's Associates. Defendant Christopher J. MacDonald, who had been associated with the leasing operations of Doctor's Associates since 1984, held the position of vice-president for defendant Subway, Inc., and he executed the sublease agreements on Subway, Inc.'s behalf.

Subway, Inc., was a Connecticut corporation like Doctor's Associates, and its operations were completely intertwined with those of Doctor's Associates. Defendants have not identified any employee of Subway, Inc., who was not also an employee of Doctor's Associates, and Subway, Inc., appears to have had no function other than acting for Doctor's Associates in subleasing facilities to Doctor's Associates' franchisees.

Correspondingly, Subway, Inc.'s sublease agreements appeared to have had no purpose other than providing a mechanism by which defendant Doctor's Associates could enforce the terms of its franchise agreements. They generated no profit for defendants. Under the subleases, plaintiffs Yates and Cox rented the premises at Subway, Inc.'s cost. Subway, Inc., did not even collect the rent. All rental payments were required to be made directly to the landlord, not Subway, Inc. The only provision in the subleases of any real consequence was that any "default in the performance of any of the terms, covenants or conditions" of the franchise agreements also constituted a breach of the subleases and entitled Subway, Inc., to terminate the leases and force the plaintiffs to surrender the premises.

After the franchise agreements and subleases were executed, plaintiffs Cox and Yates assigned their rights and liabilities under the franchises to plaintiff Substantial Enterprises, Inc., an Illinois corporation. Such assignments were expressly permitted under the terms of the franchise agreements, although the agreements provided that the assignments would not relieve the franchisees, Yates and Cox, of their personal liability.

Following the assignment of the franchises, plaintiff Cox began negotiations with the May Company on behalf of Substantial Enterprises to open additional Subway sandwich stores in shopping malls which May Company owned and operated. These negotiations culminated in what became known as the "three mall deal." Under the terms of that deal, Substantial Enterprises was to first open a Subway sandwich store in the Mid-Rivers Shopping Mall in St. Charles, Missouri, followed by an additional store in the Alton Square Shopping Mall in Alton, Illinois, and finally one in the St. Clair Shopping Plaza in Fairview Heights, Illinois. Plaintiff Substantial Enterprises II, a Missouri corporation, was incorporated by plaintiffs for the spe-

cific purpose of operating the Mid-Rivers Shopping Mall store in Missouri. Plaintiffs intended to use their three inactive franchises for these three locations.

Plaintiffs claim that the opening of the Missouri store at Mid-Rivers Shopping Mall was a condition precedent to the "three mall deal" with the May Company, and they anticipated that it would lead to future deals with the May Company to open up additional Subway sandwich stores in other May Company malls throughout the State of Missouri. After the "three mall deal" was negotiated, however, a dispute arose between plaintiffs and defendants regarding plaintiffs' expansion plans. This dispute centered specifically on plaintiffs' plans to open the unit in Missouri at the Mid-Rivers location. Plaintiffs charge that defendants ultimately refused to approve the Mid-Rivers location and would not even approve alternative locations in Illinois which plaintiffs hoped to use for their three inactive franchises.

Plaintiffs responded to these actions by filing a five-count complaint against defendants in the circuit court of Madison County. Counts I through IV were each brought by plaintiffs Yates, Cox and Substantial Enterprises. Count I alleged that defendants had violated section 4.3 of the Illinois Franchise Disclosure Act (Ill. Rev. Stat. 1985, ch. 121½, par. 704.3), which governs the termination of franchises. Count II alleged that defendants had committed fraudulent practices in violation of section 6 of the Illinois Franchise Disclosure Act (Ill. Rev. Stat. 1985, ch. 121½, par. 706). Count III was premised on common law fraudulent misrepresentation, while count IV alleged willful and wanton breach of contract. Count V was brought on behalf of Substantial Enterprises II alone and alleged intentional interference with prospective economic advantage.

Plaintiffs' complaint was filed on June 17, 1988. The following month, defendants filed a petition to remove the case to the United States District Court for the Southern District of Illinois pursuant to 28 U.S.C. §1441 (1982). Once in Federal court, defendants filed a motion in which they requested the court to compel plaintiffs to arbitrate their claims and to stay all judicial proceedings pending the conclusion of the arbitration. That motion was apparently argued and taken under advisement, but before the motion was ruled upon, the U.S. District Court ordered that the case be remanded to the circuit court of Madison County.

Following remand, defendants Doctor's Associates, Subway, Inc., Subway Development Corporation of Eastern Missouri, and Hossein Naemi filed a motion to compel arbitration pursuant to the Illinois Uniform Arbitration Act (Ill. Rev. Stat. 1987, ch. 10, par. 101 *et seq.*)

and to stay all judicial proceedings pending the conclusion of that arbitration. The basis for this motion was section 10(c) of the parties' franchise agreements, which provided:

"Any controversy or claim arising out of or relating to this contract or the breach thereof shall be settled by Arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association at a hearing to be held in Bridgeport, Connecticut and judgment upon an award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof. The commencement of arbitration proceedings by an aggrieved party to settle disputes arising out of or relating to this contract is a condition precedent to the commencement of legal action by either party. The cost of such a proceeding will be borne equally by the parties."

At the same time this motion was filed, defendants Parent, Deluca, and MacDonald filed separate motions asking that they be dismissed from the case on the grounds that the court lacked personal jurisdiction over them. (Another defendant, named Axelrod, joined in this motion, but he was later dismissed from the case by plaintiffs.) Their motions were denied by the court in an order entered on November 10, 1988. On December 12, 1988, MacDonald, Deluca and Parent then filed their own motion to stay the proceedings pending arbitration of the claims advanced by plaintiffs.

While the various motions to compel arbitration and stay judicial proceedings were pending, defendant Subway, Inc., filed five forcible entry and detainer actions in Madison and St. Clair Counties to evict plaintiffs Yates and Cox from the five Illinois locations where they had Subway sandwich stores in operation. The sole basis for those forcible entry and detainer actions was that Yates and Cox had allegedly violated the terms of their franchise agreements with defendant Doctor's Associates by failing to make royalty payments as the franchise agreements required.

Plaintiffs claim that they refused to make those payments because they believed that defendants' conduct in refusing to approve plaintiffs' proposed locations for their three nonoperating franchises, the same conduct which gave rise to plaintiffs' lawsuit in the circuit court of Madison County, constituted a breach of the franchise agreements by defendants themselves. In view of this breach by defendants, plaintiffs believed that they were no longer obligated to make the payments which the franchise agreements required. Plaintiffs had evidently notified Doctor's Associates that they were taking this position before the payments were terminated.

It was against this background that defendants' motions to compel arbitration of the matters raised in plaintiffs' complaint and to stay all judicial proceedings pending the outcome of that arbitration were set before the circuit court for a decision. Following a hearing, defendants' motions were denied. Defendants then brought this interlocutory appeal pursuant to Supreme Court Rule 307(a)(1) (107 Ill. 2d R. 307(a)(1)). See *Notaro v. Nor-Evan Corp.* (1983), 98 Ill. 2d 268, 271, 456 N.E.2d 93, 94-95.

On this appeal, defendant Doctor's Associates argues that the circuit court erred in refusing to order arbitration in accordance with the terms of section 10(c) of the franchise agreements. It no longer contends, however, that all of the plaintiffs should be required to submit to such arbitration. It now seeks reversal of the circuit court's order only insofar as it refused to compel arbitration with plaintiffs Yates and Cox.

None of the remaining defendants asserts any right to arbitration at all. Although defendants Subway, Inc., Subway Development Corporation of Eastern Missouri and Hossein Naemi had originally joined in Doctor's Associates' motion to compel arbitration, they, along with defendants Parent, MacDonald and Deluca, now contend simply that the circuit court erred in refusing to stay the judicial proceedings pending the outcome of the arbitration sought by Doctor's Associates.

■ Where, as here, an interlocutory appeal is brought pursuant to Supreme Court Rule 307(a)(1) (107 Ill. 2d R. 307(a)(1)), controverted facts or the merits of the case are not decided. (*Chicago & Eastern Illinois R.R. Co. v. Illinois Commerce Comm'n* (1976), 37 Ill. App. 3d 523, 524, 346 N.E.2d 432, 434.) The only question in such an appeal is whether there was a sufficient showing to sustain the order of the trial court granting or denying the relief sought. *Kelso-Burnett Co. v. Zeus Development Corp.* (1982), 107 Ill. App. 3d 34, 41-42, 437 N.E.2d 26, 31.

■ In determining whether the circuit court acted properly in denying defendants' motions, a threshold issue we must address is what law governs the parties' agreements. Defendants have suggested that the franchise agreements are contracts evidencing a transaction in interstate commerce and that the arbitration provisions in those agreements are therefore subject to the Federal Arbitration Act (9 U.S.C. §1 et seq. (1988)). Because the Federal Arbitration Act creates a body of Federal substantive law applicable to any arbitration agreement within the Act's coverage (*Geldermann, Inc. v. Stathis* (1988), 177 Ill. App. 3d 414, 420, 532 N.E.2d 366, 369), defendants reason that the State law which would otherwise govern has been preempted and that

all questions of interpretation, construction, validity, revocability and enforceability of the arbitration provisions here must be determined by reference to Federal law.

■ This argument must fail. First, as we have indicated, defendants based their motion to compel arbitration and to stay the judicial proceedings upon the Illinois Uniform Arbitration Act (Ill. Rev. Stat. 1987, ch. 10, par. 101 *et seq.*), and our review of the record has disclosed that they premised their arguments in the trial court exclusively on Illinois law. No suggestion was made that the Federal Arbitration Act preempted the law of this State until defendants filed their brief on appeal. Because the doctrine of Federal preemption was not invoked at the trial level, we believe that issue has been waived. See *Beckman v. Freeman United Coal Mining Co.* (1988), 123 Ill. 2d 281, 286, 527 N.E.2d 303, 305.

■ Even if defendants' preemption argument had not been waived, we would nevertheless be compelled to conclude that the Federal Arbitration Act (9 U.S.C. §1 *et seq.* (1988)) does not control. In advancing their analysis, defendants overlook that their franchise agreements contain a choice-of-law provision. Section 12 of the agreements expressly provides that the agreements "shall be governed by and construed in accordance with the laws of the State of Connecticut." There is nothing in the record before us to suggest that this provision was not intended to be fully applicable to the arbitration clause in the franchise agreements. As a matter of basic contract interpretation, we must therefore conclude that the parties had agreed that arbitration, like any other issue under the franchise agreements, was to be governed by the law of Connecticut.

■ Where, as here, the parties have agreed to arbitrate in accordance with State law, the Federal Arbitration Act (9 U.S.C. §1 *et seq.* (1988)) does not apply, even though the transaction involves interstate commerce. (*Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University* (1989), 489 U.S. 468, 103 L. Ed. 2d 488, 109 S. Ct. 1248.) This is so except where the applicable State law would prevent the arbitration agreements negotiated between the parties from being enforced according to their terms. See, *e.g., Southland Corp. v. Keating* (1984), 465 U.S. 1, 79 L. Ed. 2d 1, 104 S. Ct. 852 (finding preempted a State statute which rendered agreements to arbitrate certain franchise claims unenforceable); *Perry v. Thomas* (1987), 482 U.S. 483, 96 L. Ed. 2d 426, 107 S. Ct. 2520 (finding preempted a State statute which rendered unenforceable private agreements to arbitrate certain wage collection claims).

■ Such a result is implicit in the purposes of the Federal Arbi-

tration Act (9 U.S.C. §1 *et seq.* (1988)), which, as the U.S. Supreme Court has recently held, "was designed 'to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate,' [citation], and to place such agreements 'upon the same footing as other contracts.' [Citation.]" (*Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University* (1989), 489 U.S. 468, 478, 103 L. Ed. 2d 488, 499, 109 S. Ct. 1248, 1255.) The Act "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." 489 U.S. at 478, 103 L. Ed. 2d at 500, 109 S. Ct. at 1255.

In the Supreme Court's view,

> "[a]rbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate, [citation], so too may they specify by contract the rules under which that arbitration will be conducted. Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the [Federal Arbitration Act], even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward. By permitting the courts to 'rigorously enforce' such agreements according to their terms, [citation], we give effect to the contractual rights and expectations of the parties, without doing violence to the policies behind the [Act]." 489 U.S. at 479, 103 L. Ed. 2d at 500, 109 S. Ct. at 1255-56.

■ Having said all of this, we have still not fully answered the question of what law should apply in this case. A problem remains because, while the franchise agreements invoke Connecticut law, no Connecticut statutes or court decisions have been invoked by any of the parties. Under the Uniform Judicial Notice of Foreign Law Act (Ill. Rev. Stat. 1987, ch. 110, par. 8—1003 *et seq.*), both the circuit court and this court are authorized to take judicial notice of the common law and statutes of Connecticut. We think it significant, however, that none of the parties has ever requested that such notice be taken.

From our review of the record and the briefs on appeal, it appears that no one involved in this litigation has ever suggested in any way that the arbitration provisions in the franchise agreements should be judged under Connecticut law. We note once again that the motion to compel arbitration filed in the circuit court by defendants Doctor's Associates, Subway, Inc., Subway Development Corporation of Eastern Missouri, and Hossein Naemi, sought relief based not on the law

of Connecticut or even the Federal Arbitration Act, but on the Illinois Uniform Arbitration Act (Ill. Rev. Stat. 1987, ch. 10, par. 101 *et seq.*). Throughout the proceedings before the circuit court, the parties based their arguments regarding the enforceability of the disputed arbitration proceedings exclusively upon the law of Illinois. Indeed, until defendants attempted to invoke the Federal Arbitration Act in their arguments on appeal, it appeared that there was no dispute between the parties that Illinois law supplied the applicable rules of decision.

▪ Under these circumstances, we believe that the conduct of the parties resulted in a mutual waiver of those terms in the franchise agreements calling for application of Connecticut law and was tantamount to an agreement that the issue of arbitration should, instead, be decided under Illinois law. (See *Kress Corp. v. Edw. C. Levy Co.* (1981), 102 Ill. App. 3d 264, 268, 430 N.E.2d 593, 595.) Although the situation here thus differs from that present in *Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University* (1989), 489 U.S. ___, 103 L. Ed. 2d 488, 109 S. Ct. 1248, in that the express contractual choice-of-law provision was superseded by an implied agreement to abide by the law of another jurisdiction, we nevertheless believe that the principles underlying that decision apply with equal force. Under *Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University*, what matters is that an agreement to apply State law exists, not the formality with which that agreement has been expressed. Because the parties here have agreed to submit to Illinois law, and because there is no dispute that the Illinois rules governing arbitration in no way conflict with the policies underlying the Federal Arbitration Act, we therefore hold that Illinois law applies.

▪ Having found that Illinois law governs, we have no difficulty in concluding that there was a sufficient showing to support the circuit court's refusal to compel arbitration or stay the judicial proceedings. Arbitration is a favored method of settling disputes in Illinois. (*Cencula v. Keller* (1987), 152 Ill. App. 3d 754, 756, 504 N.E.2d 997, 999.) Nevertheless, a provision in a written contract to submit to arbitration may be waived. A waiver of arbitration rights is disfavored, but a waiver may occur when a party acts in a manner which is inconsistent with the arbitration clause in an agreement, thus indicating abandonment of the right to arbitration. A party's conduct amounts to waiver when the party submits arbitrable issues to a court for decision. *Atkins v. Rustic Woods Partners* (1988), 171 Ill. App. 3d 373, 378, 525 N.E.2d 551, 555.

▪ That is precisely what occurred here. To be sure, there is no

question that when plaintiffs filed their complaint in circuit court defendants did act expeditiously in attempting to stop the judicial proceedings and obtain arbitration of plaintiffs' claims. Equally clear, however, is that defendants were not content to rely on the arbitration process with respect to their own claims against plaintiffs. Instead, Subway, Inc., initiated five forcible entry and detainer actions against plaintiffs in circuit court. As we have indicated, the action filed by plaintiffs and the forcible entry and detainer actions filed in the name of Subway, Inc., arose from the same dispute and would have required consideration of many of the same issues. Defendants therefore must be regarded as having submitted arbitrable issues for judicial determination.

Defendant Doctor's Associates, the only defendant left in this case who still claims some right to compel arbitration, nevertheless attempts to avoid application of the waiver doctrine by arguing that Subway, Inc.'s actions cannot be imputed to it. Such a claim is wholly without merit. Subway, Inc., had no existence apart from Doctor's Associates. Its very reason for being was to do Doctor's Associates' bidding. If Subway, Inc., was not Doctor's Associates' alter ego, it was at least its agent. When Subway, Inc., filed the forcible entry and detainer actions this was as surely the action of Doctor's Associates as if Doctor's Associates had brought the actions in its own name.

Thus, Doctor's Associates did not merely adopt a defensive posture in order to protect its position in litigation initiated by someone else. (Cf. *Edward Electric Co. v. Automation, Inc.* (1987), 164 Ill. App. 3d 547, 554-55, 518 N.E.2d 172, 177.) Through Subway, Inc., it initiated its own proceedings to place the dispute between the parties before a judicial forum for determination. In our view, its participation in the judicial forum through the forcible entry and detainer actions was inconsistent with its contractual right to require arbitration and was an abandonment of that right.

Doctor's Associates argues, in the alternative, that under the terms of the franchise agreements themselves, any litigation brought by it cannot be construed as a waiver of its right to arbitrate. In support of this claim, Doctor's Associates cites the language in section 10(c) of the agreements which specifies that arbitration shall be conducted "in accordance with the Commercial Arbitration Rules of the American Arbitration Association." Doctor's Associates represents that under those rules, no judicial proceedings by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate. Unfortunately, the rules of the American Arbitration Association have not been included in the record before

us, and no authority has been offered by Doctor's Associates which suggests that those rules are a proper subject of judicial notice. While Doctor's Associates cites various Illinois cases which have invoked the American Arbitration Association's rules (see, *e.g.*, *Kostakos v. KSN Joint Venture No. 1* (1986), 142 Ill. App. 3d 533, 537-38, 491 N.E.2d 1322, 1326), we have no way of knowing based on this record whether the same rules cited by those authorities were in effect when the franchise agreements at issue here were executed.

In any event, our review of the record has disclosed that Doctor's Associates did not invoke the rules of the American Arbitration Association in its arguments before the trial court. As a general rule, the theory upon which a case was tried in the lower court cannot be changed on review and an issue not presented to or considered by the trial court cannot be raised for the first time on review. (*Darnall v. City of Monticello* (1988), 168 Ill. App. 3d 552, 553, 522 N.E.2d 837, 838.) Although this rule is not without exceptions (see, *e.g.*, *Apex Oil Co. v. Henkhaus* (1983), 118 Ill. App. 3d 273, 276, 454 N.E.2d 1032, 1035), we do not believe that any such exceptions are present here. We therefore deem defendants' arguments regarding the commercial rules of the American Arbitration Association to have been waived.

In sum, we find no error in the circuit court's refusal to grant Doctor's Associates' motion to compel arbitration. Because arbitration was not required, it necessarily follows that the circuit court likewise acted properly in refusing to stay the judicial proceedings pending the outcome of arbitration, as the remaining defendants had requested.

Plaintiffs advance various other arguments in support of the circuit court's decision. They contend, for example, that Doctor's Associates had no enforceable right to arbitration against plaintiffs Yates and Cox because Yates and Cox had assigned their franchise agreements to plaintiff Substantial Enterprises I, and Doctor's Associates has not sought arbitration with that corporation. Plaintiffs also assert, among other things, that the arbitration provision itself was unconscionable and unenforceable. In view of our disposition, these additional arguments need not be addressed.

For the foregoing reasons, the order of the circuit court of Madison County denying defendants' motions to compel arbitration and to stay the judicial proceedings is affirmed.

Affirmed.

WELCH and HOWERTON, JJ., concur.