RUSSELL BURNETT *et al.*, Plaintiffs-Appellees, v. SAFECO INSURANCE COMPANY OF ILLINOIS, Defendant-Appellant (John Adamson *et al.*, d/b/a Adamson-Matzenbacher Insurance Agency, Defendants).

Fifth District   No. 5—91—0009

Opinion filed April 14, 1992.

David M. Duree, of O'Fallon, and Reinert & Duree, P.C., of St. Louis, Missouri (Robert L. Carter, of counsel), for appellant.

Bernard J. Ysursa, of Cook, Shevlin, Keefe, Ysursa, Brauer & Bartholomew, Ltd., of Belleville, for appellees.

JUSTICE CHAPMAN delivered the opinion of the court:

On September 22, 1989, Bonnie McMurray, a passenger in a vehicle operated by Robert Robinette, was killed when Robinette lost control of his vehicle and struck a tree. Notice of the accident was given

to the defendants and a claim was made for the death of Bonnie Mc-
Murray under the provisions of two motor vehicle insurance policies
issued by the defendants to Bonnie McMurray and to Russell and
Patricia Burnett. Plaintiffs received $5,000 pursuant to the medical-
payment limit under Bonnie McMurray's motor vehicle insurance pol-
icy and $50,000 pursuant to the uninsured motorist provision of Mc-
Murray's policy. Dissatisfied with these amounts, plaintiffs filed a
two-count complaint against the defendants. Count I alleges that
Safeco Insurance Company of Illinois (Safeco) did not adequately offer
uninsured motorist coverage equal to the bodily injury liability limits
on both the decedent's and the Burnetts' policies, in violation of sec-
tions 143a—2(1) and (2) of the Illinois Insurance Code (Ill. Rev. Stat.
1989, ch. 73, pars. 755a—2(1), (2)). Count I sought a reformation of
the insurance policies issued by Safeco to the Burnetts and to McMur-
ray. Count II, which was directed at defendants Adamson and Matzen-
bacher, was severed from count I and is not included in this appeal.

The limits of coverage in Bonnie McMurray's policy and in
Patricia and Russell Burnetts' policy were $300,000 per person/
$300,000 per occurrence bodily injury liability, $100,000 property dam-
age liability, $5,000 medical payments, and $50,000 per person/
$100,000 per accident uninsured/underinsured liability. Plaintiffs
testified that when their daughter Bonnie McMurray applied for in-
surance she was not informed that she could elect to increase the un-
insured motorist coverage limits in an amount equal to the bodily in-
jury liability coverage on her motor vehicle insurance. The Burnetts
also testified that they were not advised of the option to increase the
uninsured limits in their own policy or in Bonnie's policy. The trial
court entered judgment in favor of the plaintiffs and ordered the un-
insured/underinsured limits of Bonnie McMurray's policy increased
from $50,000/$100,000 to $300,000/$300,000. As to the Burnetts' pol-
icy, the court found that Russell and Patricia Burnett had not met
their burden of proof and refused to order the reformation of their in-
surance policy. Safeco appeals.

The first issue on appeal is whether the trial court erred in strik-
ing Safeco's jury demand. In the proceeding below, the trial court
severed count I from count II and heard the issues on count I without
a jury. Safeco concedes that count I seeks declaratory relief. Safeco
contends, however, that count I is at law and not in equity and, there-
fore, Safeco was entitled to a jury. Count I seeks a declaration of
rights: (1) that Safeco provide uninsured motorist coverage to the
plaintiffs to the extent of the total bodily injury liability limits; and (2)
that Safeco be directed to arbitrate the wrongful death claim under

the uninsured motorist provisions of the policies issued to the plaintiffs. As the parties agree that the request for arbitration is equitable in nature, we need only concern ourselves with the request to increase the coverage under the insurance policies.

The right to a jury trial in a civil action arises pursuant to article I, section 13, of the Illinois Constitution: "The right of trial by jury as heretofore enjoyed shall remain inviolate." (Ill. Const. 1970, art. I, §13.) In *Lazarus v. Village of Northbrook* (1964), 31 Ill. 2d 146, 148, 199 N.E.2d 797, 799, the supreme court construed this provision as guaranteeing the right to trial by jury as it existed in common law actions when this country's constitution was adopted. There was then, and there currently is, no constitutional right of trial by jury in equity. (*Lazarus*, 31 Ill. 2d at 148, 199 N.E.2d at 799; *Zurich Insurance Co. v. Raymark Industries, Inc.* (1986), 145 Ill. App. 3d 175, 494 N.E.2d 634.) As stated by the supreme court:

> "Actions for a declaratory judgment were unknown to the common law [citations], and are neither legal nor equitable, but are *sui generis* [citation]. Consequently, the right to trial by jury depends upon the relief sought. When a declaration of rights is the only relief sought, the predominant characteristics of the issues in dispute determine whether there exists the right to a jury trial. If additional relief is sought, the nature of that relief determines the right to a trial by jury." *Zurich Insurance Co. v. Raymark Industries, Inc.* (1987), 118 Ill. 2d 23, 57-58, 514 N.E.2d 150, 165-66.

The underlying issue in dispute before the trial court was whether the court could imply by law that the uninsured/underinsured limits in the policies should be increased. To reach this issue the court first had to determine if an offer to increase coverage was made as required by law. (See *Tucker v. Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d 329, 465 N.E.2d 956.) Once the court found that the offer for uninsured/underinsured coverage had not been made to Bonnie McMurray, the court merely had to imply by law the coverage into her policy. (See *Eipert v. State Farm Mutual Automobile Insurance Co.* (1989), 189 Ill. App. 3d 630, 545 N.E.2d 497; *Blake v. State Farm Mutual Automobile Insurance Co.* (1988), 168 Ill. App. 3d 918, 523 N.E.2d 85.) The construction of a contract, in this case an insurance policy, and the determination of the rights and obligations of the parties to the contract are questions of law, the determination of which rests exclusively with the court. (*Zurich Insurance Co. v. Raymark Industries, Inc.* (1987), 118 Ill. 2d 23, 58, 514 N.E.2d 150, 166.) As the predominant characteristics of the issues before the trial court

were within the exclusive province of the court, we cannot find that the trial court erred in striking Safeco's jury demand as to count I.

■ Safeco next argues that pursuant to principles of equity Patricia and Russell Burnett should be precluded from recovering because the court determined that they personally were adequately informed of the option to increase the uninsured/underinsured limits of coverage in their policy. Safeco contends that to reward the Burnetts for their failure to relay to Bonnie McMurray their knowledge of the option to increase the uninsured/underinsured limits would be contrary to the equitable principle of fair dealing. The parties disagreed as to whether or not the Burnetts were adequately informed of the option to increase the limits of their own policy, but the court found that the Burnetts had not met their burden of proof on that issue. We find this inconsequential to the issue at bar, however, because the issue here is whether the decedent, Bonnie McMurray, was informed of her rights pursuant to sections 143a–2(1) and (2) of the Illinois Insurance Code. Ill. Rev. Stat. 1989, ch. 73, pars. 755a–2(1), (2).

It is undisputed that the policy issued to Bonnie McMurray was for a vehicle which she was going to personally own; the policy was issued in Bonnie McMurray's name only; the signature of the insured on the application for insurance reads "Bonnie McMurray." Sections 143a–2(1) and (2) of the Illinois Insurance Code provide:

> "No policy *** shall be renewed or delivered or issued *** unless uninsured motorist coverage *** is offered in an amount up to the insured's bodily injury liability limits.
>
> *** The named insured may elect to purchase limits of uninsured motorist coverage in an amount up to the bodily injury liability limits on the insured motor vehicle or reject the offer of additional uninsured motorist coverage ***." (Ill. Rev. Stat. 1989, ch. 73, pars. 755a–2(1), (2).)

Safeco's argument would have this court deny recovery where third parties, in this case the Burnetts, were informed of the rights conferred under the Illinois Insurance Code as to their own policies. Such an interpretation of the statute is inconsistent with sections 143a–2(1) and (2) where it is the named insured whose rights are sought to be protected. Whether or not the Burnetts were advised of their rights to have the limits of coverage in their policies increased is of no consequence to the determination of whether their daughter was so advised with regard to the policy issued to her.

■ Moving on to the next issue, Safeco draws our attention to section 143a–2(2) of the Illinois Insurance Code:

"In those cases where the insured has elected to purchase limits of uninsured motorist coverage which are less than bodily injury liability limits or rejects limits in excess of that required by law, the insurer need not offer in any renewal, reinstatement, reissuance, substitute, amended, replacement or supplementary policy, coverage in excess of that elected by the insured in connection with a policy previously issued to such insured by the same insurer unless the insured subsequently makes a written request for such coverage." (Ill. Rev. Stat. 1989, ch. 73, par. 755a—2(2).)

Safeco argues that it owed no duty to advise Bonnie McMurray of the option to increase the limits of coverage because the policy issued to her was a "renewal, reinstatement, reissuance, substitute, amend-[ment], replacement or supplementary policy" to the policies issued to Patricia and Russell Burnett, on which Bonnie McMurray was an insured. We disagree.

The primary rule of statutory construction is that the court must ascertain and give effect to the intent of the legislature. (*People v. Ullrich* (1990), 135 Ill. 2d 477, 483, 553 N.E.2d 356, 359.) In construing a statutory provision the court should look first at the plain meaning of the language of the statute. (*Ullrich*, 135 Ill. 2d at 483, 553 N.E.2d at 359.) A word having a well-known legal significance generally will be presumed to have that meaning in the statute. (*Makela v. State Farm Mutual Automobile Insurance Co.* (1986), 147 Ill. App. 3d 38, 48, 497 N.E.2d 483, 490.) The words used to describe the types of policies referred to in section 143a—2(2) have been defined as follows:

"Renewal" is "[t]he substitution of a new right or obligation for another of the same nature." Black's Law Dictionary 1165 (5th ed. 1979).

"Reinstatement" is "a restoration of the insured's rights under a policy which has lapsed or been cancelled." Black's Law Dictionary 1157 (5th ed. 1979).

"Issue" is "[t]he act of issuing, sending forth, emitting or promulgating." Black's Law Dictionary 745 (5th ed. 1979).

"Substitute" is "[t]o put in the place of another person or thing; to exchange." Black's Law Dictionary 1281 (5th ed. 1979).

"Amend" is "[t]o change, correct, revise." Black's Law Dictionary 74 (5th ed. 1979).

"Replace" is "to supplant with substitute or equivalent." Black's Law Dictionary 1168 (5th ed. 1979).

"Supplementary" is "[a]dded as a supplement; additional." Black's Law Dictionary 1290 (5th ed. 1979).

The insurance policy at bar does not fall within the statutory exclusions listed. We base this conclusion on the plain meaning of the words in section 143a—2(2) and the facts of this case. Prior to Bonnie McMurray having an insurance policy issued in her name alone, she was an insured under her parents' policies because she was a resident of their household. McMurray was included as an insured under the Burnetts' policies even though she was not specifically listed as a named insured in the declaration sheet. Bonnie McMurray's policy, which is at issue here, was in her name alone and listed her as the named insured. Bonnie McMurray completed a new application for insurance before that policy was issued. That policy was for an automobile which had never been listed as an insured vehicle on Russell or Patricia Burnett's policies. The premium for McMurray's policy was separate from the premiums paid for the Burnetts' policies. We agree with the trial court's conclusion that the policy issued to Bonnie McMurray was a new policy and as such Safeco was required to advise McMurray of the option to increase the limits of uninsured motorist coverage.

Safeco next argues that the trial court's decision was against the manifest weight of the evidence. Safeco insists that the court erred in finding that Bonnie McMurray was a "passenger in a motor vehicle being driven by Robert Robinette, an uninsured driver, when the said Robert Robinette lost control of his motor vehicle allowing it to cross the centerline, leave the roadway and striking [sic] a tree, resulting in the death of Bonnie McMurray." Defendant contests the allegations of how the accident occurred and argues that there was no evidence at trial as to the circumstances surrounding the accident.

We agree that the trial court acted prematurely in making a determination as to the cause of the accident and the fault of the parties. Plaintiffs agree that questions of the liability of the uninsured motorist, the contributory fault of Bonnie McMurray, and the damages sustained in the accident are yet to be resolved.

■■ In general, a declaratory judgment action brought prior to a determination of the insured's liability is premature since the question to be determined is not then ripe for adjudication. (*Brotherhood Mutual Insurance Co. v. Roseth* (1988), 177 Ill. App. 3d 443, 450, 532 N.E.2d 354, 359.) An exception to this rule exists when the issues raised in the declaratory judgment action are severable from those in the underlying action, " 'the primary concern being that an untimely determination in the declaratory judgment action could subsequently

prejudice a party in the underlying action through application of collateral estoppel.' " (*Brotherhood Mutual*, 177 Ill. App. 3d at 451, 532 N.E.2d at 359, quoting *Maryland Casualty Co. v. Chicago & North Western Transportation Co.* (1984), 126 Ill. App. 3d 150, 157, 466 N.E.2d 1091, 1096; see *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24.) In the instant case the questions before the trial court in the declaratory judgment action were whether or not an adequate offer of uninsured motorist coverage was made and whether the insurance policies should be reformed; the ultimate liability of the defendants was not at issue.

Illinois Supreme Court Rule 366 provides:

> "(a) Powers. In all appeals the reviewing court may, in its discretion, and on such terms as it deems just,
>
>> (1) exercise all or any of the powers of amendment of the trial court;
>
> * * *
>
>> (5) enter any judgment and make any order that ought to have been given or made, and make any other and further orders and grant any relief, * * * that the case may require." (134 Ill. 2d R. 366.)

To avoid any possible prejudice to the parties with regard to the trial court's finding as to how the accident occurred, we hereby vacate paragraph 3 of the trial court's judgment without prejudice to the rights of the parties.

■ Safeco next argues that the court erred in allowing the case to proceed under count I prior to the trial of count II. Count I of plaintiffs' complaint seeks declaratory relief and asks the court to increase the uninsured/underinsured limits of both McMurray's policy and the Burnetts' policy to the bodily injury liability limits of those policies. Count II seeks money damages for the same alleged Insurance Code violation on a negligence theory. Safeco submits that a determination of the ultimate factual issues in count I prejudiced it in the trial of count II.

In the declaratory judgment action the issues were whether the defendants made an adequate offer of uninsured motorist coverage under the Insurance Code and whether the plaintiffs were entitled to reformation of their insurance policies. The allegations in the two counts are similar; however, as plaintiffs point out, they are actually praying for different relief. There has been no determination as to the negligence on behalf of Safeco or its agents, nor has there been any determination as to the liability of the underinsured motorist. Based

on the circumstances, we cannot find that the trial court erred in proceeding as to count I before the trial of count II.

■■ Safeco next alleges that the trial court's decision that Bonnie McMurray was not presented with an adequate offer to increase her uninsured limits to her bodily injury liability limits was against the manifest weight of the evidence.

At the time Bonnie McMurray purchased her insurance, section 143a—2(1) of the Code required the insurer to offer McMurray uninsured motorist coverage in an amount equal to the insured's bodily injury liability limit. (Ill. Rev. Stat. 1987, ch. 73, par. 755a—2(1).) Under *Cloninger v. National General Insurance Co.* (1985), 109 Ill. 2d 419, 488 N.E.2d 548, that offer had to satisfy a four-point test for commercial reasonableness. The offer was required: (1) to notify the insured in a commercially reasonable manner if the offer was not made in face-to-face negotiations; (2) specify the limits of the optional coverage without using general terms; (3) intelligibly advise the insured of the nature of the offer; and (4) advise the insured that the optional coverage is available for a relatively modest premium increase. *Cloninger*, 109 Ill. 2d at 425-26, 488 N.E.2d at 550.

Julia Riviers, an insurance agent with Adamson-Matzenbacher Insurance Agency, testified that in July of 1989, Bonnie McMurray and her mother, Patricia Burnett, came to the agency to complete an application for insurance coverage. Riviers testified that McMurray completed most of the application in her own handwriting and that she read the application before signing it. Riviers testified that she reviewed the policy with McMurray and discussed the amounts of coverages with her at that time. She advised Bonnie McMurray that she could have uninsured motorist coverage limits equal to the limits of her bodily injury liability limits and that the cost of the extra coverage would be approximately $12.

As part of the evidence in this case, certain statements were read by the court including portions of the discovery deposition of Julia Riviers. In that deposition she was asked the following questions and gave the responses indicated:

"Q. What else did you say to her [Bonnie McMurray] concerning uninsured or underinsured motorists coverage?

A. That she can—For an extra premium, she can get it up to the limits of her liability.

Q. Did you tell her how much the extra premium was?

A. No I did not. She specifically wanted the same coverages that her mother had for the same limits.

Q. Okay. She told you that?

A. Patricia told me that. And then when I offered it to Bonnie, she did not want it.

Q. Well, let's go back. As I understand it then, you told Bonnie that you could, for an—she could have for an additional premium, an uninsured and underinsured motorist coverage limits up to the limit of her bodily injury liability limits; is that correct?

A. That is correct.

Q. But you did not tell her the amount of the increase or the additional premium; is that correct?

A. The exact figure, no.

\* \* \*

Q. Okay. The explanation you gave me is what—You've already told me what you told her. Is there something else you told her that you haven't mentioned here today concerning uninsured or underinsured motorist coverage?

A. No."

When asked at trial why she did not mention during the taking of her deposition that she had told McMurray the cost of additional coverage, Riviers explained that she had not been asked about this. Riviers admitted, however, that at her deposition she answered "No" when asked whether there was anything else she had told McMurray regarding uninsured or underinsured motorist coverage which she had failed to mention.

Patricia Burnett testified that she accompanied Bonnie McMurray to the insurance agency in order to complete the application for insurance. Burnett testified that she was with Bonnie at all times while at the agency and heard every conversation that her daughter had with Julia Riviers. She testified that Riviers did not explain to her daughter that she could have additional uninsured motorist coverage up to her bodily injury liability limits, nor did she advise Bonnie how much it would cost to increase the uninsured motorist limits. Burnett did recall that Riviers advised Bonnie McMurray as to the total cost of the insurance.

According to Patricia Burnett, Safeco never intelligently advised Bonnie McMurray of the nature of the uninsured/underinsured coverages and never offered the option for a modest increase in the premium. The judgment of the trial court provides that "although Julia Riviers [has] testified that she advised Bonnie McMurray of her right to purchase uninsured motorist coverages up to $300,000.00 and that she further advised Bonnie McMurray that said increase could be received for a little less than $12.00, such testimony is not credible." It

is not inconsistent with the evidence that any mention of the uninsured limits with respect to the bodily injury liability limits was general in nature and lacking in the detail required by *Cloninger*. (See *Overbey v. Illinois Farmers Insurance Co.* (1988), 170 Ill. App. 3d 594, 525 N.E.2d 1076; *cf. Krska v. Allstate Insurance Co.* (1987), 162 Ill. App. 3d 549, 515 N.E.2d 1304.) The trial court is in a far better position to determine the credibility of the witnesses, and the court of review will not disturb its findings unless they are against the manifest weight of the evidence. (*Orchard Shopping Center, Inc. v. Campo* (1985), 138 Ill. App. 3d 656, 665, 485 N.E.2d 1248, 1254.) In this case we cannot find that the trial court's decision was against the manifest weight of the evidence.

Safeco contends that the trial court erred in reforming Bonnie McMurray's insurance policy, increasing the uninsured/underinsured motorist coverage to that of the bodily injury liability coverage. Defendant argues that this remedy required the court to presume that Bonnie McMurray would have elected higher limits of uninsured/ underinsured coverage than her parents. Section 143a—2 of the Insurance Code (Ill. Rev. Stat. 1989, ch. 73, par. 755a—2) is a source of consumer protection, to ensure that insureds receive information adequate to make an informed decision about coverage. (*Blake v. State Farm Mutual Automobile Insurance Co.* (1988), 168 Ill. App. 3d 918, 923, 523 N.E.2d 85, 88.) Implying the maximum amount offered as a suitable remedy where the insurer fails to perform its statutory duty to offer increased uninsured motorist coverage has been upheld as a proper remedy. (See *Blake*, 168 Ill. App. 3d 918, 523 N.E.2d 85; see also *Eipert v. State Farm Mutual Automobile Insurance Co.* (1989), 189 Ill. App. 3d 630, 545 N.E.2d 497.) We cannot conclude that the trial court erred in implying by law the remedy of reformation of the insurance policy at bar.

■■ The next issue is whether the trial court erred in ruling that communications between the attorney for the defendants and Julia Riviers are not protected by the attorney-client privilege. Defendants argue that the attorney-client privilege between Julia Riviers and defendants' attorney was violated. Defendants contend that the discovery deposition of Julia Riviers, as an admission against interest of Safeco, could be read only on the basis that she was an officer of Safeco. Defendants argue that the deposition would not be admissible on the grounds that she was an agent of Safeco because such posttransaction statements by agents are not admissible as admissions against interest. Notwithstanding these arguments, defendants fail to specify what testimony in particular may have been admitted in viola-

tion of the privilege. Additionally, no allegation has been made as to whether that testimony, if inadmissible, was material to the court's decision in this case and whether its inadmissibility would warrant a reversal of the court's judgment. Defendants do not explain how the purported inadmissible testimony prejudiced their position.

This court is not in a position to speculate as to what, if any, prejudice resulted from the admission of the purported inadmissible testimony. A reviewing court is entitled to have the issues clearly defined with pertinent authority cited. (See *Schwachman v. Greenbaum Mortgage Co.* (1983), 115 Ill. App. 3d 234, 450 N.E.2d 750; *Pecora v. Szabo* (1982), 109 Ill. App. 3d 824, 441 N.E.2d 360.) Under the circumstances, we cannot find that the trial court erred in its ruling.

■ Finally, defendants argue that the plaintiffs have waived their right to arbitrate the issues of the negligence of the uninsured motorist, damages and the contributory fault of McMurray. Defendants refer to the judgment of the trial court which, with regard to count I, provides in pertinent part:

> "The Court further finds *** that the parties may proceed with the arbitration presently pending to determine the actual damages sustained by the next of kin of Bonnie McMurray as a result of her wrongful death."

Defendants assert that because the plaintiffs have chosen to litigate the issue of damages in count II they have waived their right to arbitration.

Arbitration is a favored method of settling disputes in Illinois. (*Yates v. Doctor's Associates, Inc.* (1990), 193 Ill. App. 3d 431, 440, 549 N.E.2d 1010, 1016.) A waiver of arbitration rights is disfavored, but a waiver may occur when a party's conduct is inconsistent with the arbitration clause in an agreement, thus indicating an abandonment of the right to arbitration. (*Yates*, 193 Ill. App. 3d at 440, 549 N.E.2d at 1016.) The arbitration clause in Bonnie McMurray's policy provides:

> "If any such person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured or underinsured motor vehicle because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this insurance, then the matter or matters upon which such person and the company do not agree shall be settled in accordance with the rules of the American Arbitration Association."

Plaintiffs argue that they have at no time conducted themselves in a manner inconsistent with the right to arbitrate. Plaintiffs submit that they sought arbitration prior to the trial of counts I and II, and it was the defendant who objected and obtained a stay of arbitration.

In the declaratory judgment proceeding the issues were whether the defendants made an adequate offer of uninsured motorist coverage under the Insurance Code and whether the plaintiffs were entitled to reformation of their insurance policies. No determination has been made as to the liability of the uninsured motorist, the damages sustained by the insured, or the contributory fault of the insured. Count II is an alternate cause of action by the plaintiffs to recover money damages for the negligence of the defendants. It is plaintiffs' right to plead alternative counts for recovery. Plaintiffs sought arbitration early on but defendants objected to such. We cannot find that under the facts of this case plaintiffs have submitted arbitrable issues to the court so as to abandon their right to arbitration. (See *D.E. Wright Electric, Inc. v. Henry Ross Construction Co.* (1989), 183 Ill. App. 3d 46, 538 N.E.2d 1182.) Plaintiffs have not waived their right to arbitrate the issues of negligence of the uninsured motorist, damages and the contributory fault of Bonnie McMurray.

In light of the foregoing, we vacate paragraph 3 of the judgment of the trial court without prejudice to the rights of the parties, and we affirm the judgment of the trial court as to all remaining issues.

Affirmed in part; vacated in part.

GOLDENHERSH and LEWIS, JJ., concur.