THE BOARD OF MANAGERS OF CHESTNUT HILLS CONDOMINIUM ASSOCIATION, Plaintiff-Appellant, v. PASQUINELLI, INC., Defendant-Appellee.

First District (5th Division)   No. 1—03—3556

Opinion filed December 23, 2004.

750

Kovitz Shifrin Nesbit, of Buffalo Grove (Jeffrey S. Youngerman and Stephen D. Sharp, of counsel), for appellant.

Clausen Miller, P.C., of Chicago (Edward M. Kay, Ivar R. Azeris, and Melissa A. Murphy-Petros, of counsel), for appellee.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, the board of managers of Chestnut Hills Condominium Association, appeals from entry of an order of the circuit court of Cook County staying the proceeding of its claims in counts I, II, and IV of its complaint against defendant, Pasquinelli, Inc., pending submission of all matters to arbitration. On appeal, plaintiff contends that the trial court erred in staying all matters subject to arbitration where the allegations of counts I, II and IV of plaintiff's complaint are not subject to mandatory arbitration. For the following reasons, we reverse the judgment of the trial court and remand this matter for reconsideration consistent with this opinion.

The following facts are relevant to this appeal. Plaintiff, Chestnut Hills Condominium Association (the Association), is the managing board of a 19-building, 70-unit residential condominium development located in Burr Ridge, Illinois. Pasquinelli, Inc. (Pasquinelli), developed and sold the condominium units of Chestnut Hills to individual owners pursuant to a document entitled "Standard Land and Building Contract" (Purchase Contract). The Purchase Contract contained the following language:

"PURCHASER HAS READ AND UNDERSTOOD THE TERMS OF THE SAMPLE COPY OF THE LIMITED WARRANTY, IN-CLUDING ANY PROVISION THAT MAY REQUIRE ALL DIS-PUTES THAT ARISE UNDER THE RWC LIMITED WARRANTY TO BE SUBMITTED TO BINDING ARBITRATION."

The "Limited Warranty" (hereafter Limited Warranty) referred to in the Purchase Agreement sets forth its coverage for the common elements of a condominium as follows:

"CONDOMINIUM COVERAGE: This Limited Warranty shall only apply to warranted common elements. *Warranted common elements* are those portions of the defined electrical, heating, ventilation, cooling, plumbing and structural systems which serve two (2) or more residential units, and are contained wholly within a residential structure. \*\*\* Examples of common elements which are covered by this Limited Warranty are hallways, meeting rooms and other spaces wholly within the residential structure designated for the use of two (2) or more units. Examples of common elements which are not covered under this Limited Warranty are club houses, recreational buildings and facilities, exterior structures, exterior walkways, decks, balconies, arches or any other non-residential structure which is part of the condominium." (Emphasis in original.)

The Limited Warranty further provides in pertinent part as follows: "This Limited Warranty is separate and apart from your contract and/or sales agreements with your Builder." A claim under the warranty begins with a "request for warranty performance." The Limited Warranty sets forth the following procedure for dealing with requests for warranty performance:

"Within thirty (30) days following the Administrator's receipt of proper notice of request for warranty performance, the Administrator may review and mediate your request by communicating with you, your Builder and any other individuals or entities who the Administrator believes possess relevant information. If, after thirty (30) days, the Administrator has not been able to successfully mediate your request, or at any earlier time when the Administrator believes that your Builder and you are at an impasse, then the Administrator will notify you that your request has become an Unresolved Warranty Issue."

An "Unresolved Warranty Issue" is defined as follows:

"All requests for warranty performance, demands, disputes, controversies and differences that may arise between the parties to this Limited Warranty that cannot be resolved among the parties. An Unresolved Warranty Issue may be a disagreement regarding:

a. the coverages in this Limited Warranty

b. an action performed or to be performed by any party pursuant to this Limited Warranty

c. the cost to repair or replace any item covered by this Limited Warranty."

The Limited Warranty requires binding arbitration of disputes of any unresolved warranty issues. An owner begins the arbitration process "by giving the Administrator written notice of your request for arbitration of an Unresolved Warranty Issue."

On February 18, 2003, the Association filed a four-count complaint against Pasquinelli alleging that on or after February 18, 1999, the Association learned of the existence of certain defects in design, material or workmanship or both, relating to siding, roofing grading-exterior drainage, balconies, masonry, exterior wood rot, peeling paint, concrete sidewalks, stoops and driveways, and a built-in TV antenna system.

In count I, the Association alleged breach of the implied warranty of habitability arising out of the Purchase Contract. In count II, the Association alleged breach of the implied warranty of good workmanship. Count III contained allegations of breach of the express warranty for constructing the common elements and buildings with one or more of the defects delineated above, and count IV alleged breach of contract for failure to construct the buildings in substantial compliance with the feature sheet and specifications and for failure to install built-in TV antenna systems, among other things.

On May 30, 2003, Pasquinelli filed a motion to dismiss counts I through IV of the Association's complaint pursuant to section 2—615 of the Illinois Code of Civil Procedure (735 ILCS 5/2—615 (West 2002)) or, in the alternative, to stay proceedings as to counts III and IV pending submission to arbitration. The Association filed a motion opposing Pasquinelli's motion to dismiss, therein conceding that the terms of the Limited Warranty require binding arbitration for claims made under the Limited Warranty and withdrawing count III. The Association maintained that counts I, II and IV were not subject to the arbitration provision of the Limited Warranty because the Association sought relief under distinct legal theories.

On October 31, 2003, the trial court issued an order dismissing count III and staying the proceedings related to counts I, II, and IV pending submission of the claims to arbitration. This timely appeal followed.

## OPINION

On appeal, the Association contends that the trial court erred in staying the proceedings related to counts I, II, and IV of its complaint, pending submission of the claims to arbitration.

## I. The Standard of Review

■ Initially, the parties dispute the standard of review.

The Association argues that because the trial court made no factual findings but merely stayed the proceedings pending arbitration, the order is reviewable *de novo*. *Weiss v. Waterhouse Securities, Inc.*, 335 Ill. App. 3d 875, 885, 781 N.E.2d 1105 (2002); *Bass v. SMG, Inc.*, 328 Ill. App. 3d 492, 765 N.E.2d 1079 (2002).

Pasquinelli responds that the standard of review of an interlocutory order granting or denying a motion to compel arbitration is whether the trial court abused its discretion. *Rosen v. SCIL, LLC*, 343 Ill. App. 3d 1075, 799 N.E.2d 488 (2003); *Peregrine Financials & Securities v. Hakakha*, 338 Ill. App. 3d 197, 788 N.E.2d 263 (2003). Pasquinelli argues that the *de novo* standard applies only where the arbitration agreement has been legally construed by the trial court, *i.e.*, where the trial court finds that the arbitration provision is unconscionable. *Rosen*, 343 Ill. App. 3d at 1079-80. Pasquinelli concludes that because the trial court did not legally construe the arbitration provision, its order must be reviewed only for an abuse of discretion.

The Association replies that the court in *Peregrine*, in fact, applied a *de novo* standard of review; the trial court made no findings of facts but, rather, ruled as a matter of law:

> "The instant case is before us as an interlocutory appeal. Normally, such appeals are reviewed under an abuse of discretion standard to determine whether the trial court was correct in granting or denying the relief requested. *Feldheim v. Sims*, 326 Ill. App. 3d 302, 308 (2001). 'A motion to compel arbitration is a prayer for injunctive relief that is treated similarly to a preliminary injunction or a restraining order, and the grant or denial of such motion is reviewable as an interlocutory appeal, subject to an abuse of discretion standard of review.' *Feldheim*, 326 Ill. App. 3d at 308-09. However, here, the trial court's order mandating that the arbitration be held in Cook County was made in the absence of any findings as to factual issues. Rather, the trial court's ruling was based upon its conclusion that, as a matter of law, section 4 of the Federal Arbitration Act required that the arbitration be held in Cook County. Because this ruling was clearly one of law, and the relevant underlying facts are not in dispute, a *de novo* standard of review is appropriate. See *Federal Signal Corp. v. SLC Technologies, Inc.*, 318 Ill. App. 3d 1101, 1105-06 (2001)." *Peregrine*, 338 Ill. App. 3d at 202.

We agree with the Association that our standard of review is *de novo*. The record does not show that the trial court conducted any hearing or heard any testimony in support of Pasquinelli's combined motions

but, rather, ruled as a matter of law that the complaint was subject to mandatory arbitration. Because the trial court made no findings of fact, we review this matter *de novo*.

## II. Claims Subject to Arbitration

On appeal, the Association contends that the only agreement between unit owners and Pasquinelli containing an arbitration clause is the Limited Warranty and that the parties are required to arbitrate only claims made under the Limited Warranty.

■ At the outset, we note that Pasquinelli persists in arguing for arbitration of count III, despite the fact, acknowledged by Pasquinelli, that the Association voluntarily withdrew count III and that the trial court entered an order dismissing count III. We find that count III is not incorporated into the complaint for further consideration by the trial court, the Association having withdrawn count III and not amended its complaint to reincorporate the count, and the trial court having entered an order allowing its withdrawal. See, *e.g., Barnett v. Zion Park District*, 171 Ill. 2d 378, 384, 665 N.E.2d 808 (1996); *W.W. Vincent & Co. v. First Colony Life Insurance Co.*, 351 Ill. App. 3d 752, 756, 814 N.E.2d 960 (2004). We therefore decline to address any argument regarding the arbitration of count III of the Association's complaint.

■ In *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr*, 124 Ill. 2d 435, 530 N.E.2d 439 (1988), our supreme court explained when it is appropriate for the circuit court to determine the issue of arbitrability:

"Where the language of the arbitration agreement is clear, and it is apparent that the dispute sought to be arbitrated falls within the scope of the arbitration clause, the court should decide the arbitrability issue and compel arbitration. [Citations.] Similarly, if it is apparent that the issue sought to be arbitrated is not within the ambit of the arbitration clause, the court should decide the arbitrability issue in favor of the opposing party, because there is no agreement to arbitrate. [Citations.] 'Thus, the arbitrability issue emerges as essentially one of giving effect to the parties' expressed intention about the use of arbitration.' [Citation.] The paramount factor in determining the parties' intention is the scope of the arbitration clause in the contract." *Donaldson*, 124 Ill. 2d at 445.

While arbitration is a favored method of dispute resolution, this court has consistently cautioned that an agreement to arbitrate is a matter of contract. Parties to an agreement are bound to arbitrate only those issues they have agreed to arbitrate, as shown by the clear language of the agreement and their intentions expressed in that language, and

that an arbitration agreement will not be extended by construction or implication. *Salsitz v. Kreiss*, 198 Ill. 2d 1, 13, 761 N.E.2d 724 (2001); *Flood v. Country Mutual Insurance Co.*, 41 Ill. 2d 91, 94, 242 N.E.2d 149 (1968).

The Association argues that its claims for breach of the implied warranty of habitability, breach of the implied warranty of good workmanship and materials and breach of the contract to construct are not claims that require arbitration. These claims arise out of the Purchase Contract, rather than the Limited Warranty; the Limited Warranty is not incorporated into the Purchase Contract by reference and there is no arbitration agreement.

■ In order for a contract to incorporate all or part of another document by reference, the reference must show an intention to incorporate the document and make it part of the contract. Claims arising out of one agreement are not subject to an arbitration clause contained in a separate agreement. *Wilson v. Wilson*, 217 Ill. App. 3d 844, 853, 577 N.E.2d 1323, 1329 (1991). The record shows that the Purchase Contract contains no arbitration agreement and that the Purchase Contract refers only to the *existence* of the Limited Warranty:

"PURCHASER HAS READ AND UNDERSTOOD THE TERMS OF THE SAMPLE COPY OF THE LIMITED WARRANTY, INCLUDING ANY PROVISION THAT MAY REQUIRE ALL DISPUTES THAT ARISE UNDER THE RWC LIMITED WARRANTY TO BE SUBMITTED TO ARBITRATION."

Thus, the Purchase Contract does not incorporate the Limited Warranty.

Pasquinelli's insistence that the Limited Warranty is "incorporated into the Purchase Contract" is without merit. The Limited Warranty specifically provides that the "Limited Warranty is separate and apart from your contract and/or sales agreements with your Builder." As there is no arbitration clause in the Purchase Contract, we find that any claims made pursuant to the Purchase Contract are not subject to binding arbitration.

Pasquinelli argues in the alternative that the Associations' claims fail because the Association seeks recovery for the same construction and other defects under alternate legal theories and that all of the factual allegations of the Association's complaint fall within the Limited Warranty's coverage for "warranted common elements."

In support, Pasquinelli relies on *J&K Cement Construction, Inc. v. Montalbano Builders, Inc.*, 119 Ill. App. 3d 663, 456 N.E.2d 889 (1983). There, the parties disputed whether an agreement to arbitrate existed. Montalbano noted that paragraph 22 of the typewritten "Standard

Contract Agreement" initialed by the parties stated: " 'All claims, disputes and other matters in question arising out of, or relating to this Agreement, or the breach thereof, shall be decided by arbitration, pursuant to the Rules established by the Northern Illinois Home Builders Association for the arbitration of such disputes.' " *Montalbano*, 119 Ill. App. 3d at 669. Montalbano argued that this clause demonstrates each party agreed to arbitration. The Falbos responded that the parties' written agreement actually contained an additional arbitration clause with a different set of governing rules, and thus, the parties could not have reached agreement on a specific arbitration procedure. The court held that while the contract does refer to two arbitration clauses, and while these two clauses appear to conflict, the language of the second clause incorporated by reference into the general conditions of the parties' contract stated that it becomes operative only if the parties do not establish an alternative procedure. The court held that the parties established an alternative arbitration procedure and, thus, the parties did agree to one form of dispute resolution. *Montalbano*, 119 Ill. App. 3d at 669.

*Montalbano* is inapposite. *Montalbano* did not hold that all claims must be arbitrated "because of common factual allegations" but, rather, that the parties agreed to arbitrate all claims under the one contract entered into between them. By contrast, the parties here entered into two separate agreements: the Purchase Contract and the Limited Warranty. The Purchase Contract contains no arbitration provision.

As quoted above, the Limited Warranty sets forth coverage for the common elements of a condominium as follows:

> "CONDOMINIUM COVERAGE: This Limited Warranty shall only apply to warranted common elements. *Warranted common elements* are those portions of the defined electrical, heating, ventilation, cooling, plumbing and structural systems which serve two (2) or more residential units, and are contained wholly within a residential structure. *** Examples of common elements which are covered by this Limited Warranty are hallways, meeting rooms and other spaces wholly within the residential structure designated for the use of two (2) or more units. Examples of common elements which are not covered under this Limited Warranty are club houses, recreational buildings and facilities, exterior structures, exterior walkways, decks, balconies, arches or any other non-residential structure which is part of the condominium." (Emphasis in original.)

The common elements of the condominium are defined by the "Declaration of Condominium Ownership for Chestnut Hills Condominium Association Condominiums" (Declaration) as follows:

" 'Common Elements' means all portions of the Property except the Units, including the Limited Common Elements, unless otherwise expressly specified herein. The common elements include without limitation, and of the following items located at the Property: the land, foundations, walls, entrances and exits, hallways (except hallways situated entirely within a Unit and serving only such unit), common meter room, mailboxes, roof, master television antenna system, if any, pipes, ducts, flues, shafts, electrical wiring and conduits (except pipes, ducts, flues, shafts, electrical wiring and conduits situated entirely with a Unit and serving only such Unit), public utility lines, structural parts of the Building, outside walks and driveways, private streets, recreational facilities located on the Property, if any, all parking areas and landscaped cul-de-sac islands, and all other portions of the Property except the individual Units. Structural columns located within the boundaries of a Unit shall be part of the Common Elements."

The factual allegations of the Association's complaint seek redress for a series of defects which are not defined as "covered common elements" under the Limited Warranty and which are not considered "common elements" under the Declaration. Therefore, the Association has alleged facts in its complaint that are not subject to arbitration.

■ Pasquinelli further argues that the Association has waived any issues regarding implied warranty of habitability as alleged in count II by paragraph 9 of the Purchase Contract. Paragraph 9 of the Purchase Contract provides, in part:

"CONSTRUCTION WARRANTY. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS CONTRACT, SELLER HEREBY EXCLUDES ANY AND ALL WARRANTIES, EXPRESS OR IMPLIED (INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF HABITABILITY, MERCHANTABIL-ITY, QUALITY OR FITNESS FOR A PARTICULAR PURPOSE), WITH RESPECT TO THE RESIDENCE AND THE PROPERTY."

In paragraph 13 of the complaint, the Association alleged:

"13. Paragraph 9 of the Purchase Contract was not brought to the attention of prospective purchasers. In fact, Pasquinelli, Inc. Acknowledged the unit owners' rights under express and implied warranties in a letter dated February 1, 2000. A true and correct copy of the February 1, 2000 letter is attached hereto as Exhibit 3."

The letter referred to above states in pertinent part:

"This is in response to your letter of 12/23/99, regarding a construction repair agreement for Chestnut Hills. Pasquinelli, Inc. feels it would be redundant to sign a separate agreement for these repairs.

There is an expressed [*sic*] and implied warranty, which already exists and addresses all items listed."

Our supreme court recognizes that a warranty of habitability is "implied as a separate covenant between the builder-vendor and the vendee because of the unusual dependent relationship of the vendee to the vendor." *Petersen v. Hubschman Construction Co.*, 76 Ill. 2d 31, 41, 389 N.E.2d 1154 (1979). The burden required for waiver of that right is very high: "Although the implied warranty of habitability is a creature of public policy, we do not consider a knowing disclaimer of the implied warranty to be against the public policy of this State. However, we do hold that any such a disclaimer must be strictly construed against the builder-vendor." *Petersen*, 76 Ill. 2d at 43.

Subsequent cases follow the standard set forth in *Peterson* for disclaimer as follows: (1) a conspicuous provision (2) which fully discloses the consequences of its inclusion (3) that was, in fact, the agreement of the parties. *Herlihy v. Dunbar Builders Corp.*, 92 Ill. App. 3d 310, 317, 415 N.E.2d 1224 (1980); *Colsant v. Goldschmidt*, 97 Ill. App. 3d 53, 56, 421 N.E.2d 1073, 1076 (1981) ("A disclaimer does not negate an implied warranty unless it is brought to the attention of the buyer and agreed to by him"). In order to disclaim the implied warranty of habitability, the words "implied warranty of habitability" must be used in the disclaimer and brought to the purchasers' attention. *Board of Managers of the Village Centre Condominium Ass'n, Inc. v. Wilmette Partners*, 198 Ill. 2d 132, 141, 760 N.E.2d 976 (2001).

The high burden required for waiver was met in *Breckenridge v. Cambridge Homes, Inc.*, 246 Ill. App. 3d 810, 616 N.E.2d 615 (1993). There, the seller of property brought a waiver similar to the one in the present case to the attention of the purchasers. The purchasers admitted that they read the language of the disclaimer and understood what they were doing when they wrote their initials next to the disclaimer paragraph. In addition, the disclaimer provision in *Breckenridge* specifically set forth the consequences of waiving the warranty. Thus, this court found that the purchasers waived their warranty of habitability.

By contrast, the record in the present case does not show an effective waiver of the implied warranty of habitability. There is no evidence that Pasquinelli called the purchasers' attention to paragraph 9 as in *Breckenridge*, or instructed the purchasers to specifically initial the provision. Finally, the provision fails to set forth the consequences of the waiver of the implied warranty of habitability.

We find that the Association has not waived any implied warranties of good workmanship and materials through paragraph 9 of the Purchase Contract. Thus, the allegations of count II of the As-

sociation's complaint alleging breach of good workmanship is not waived.

■ Finally, we address the procedural posture of Pasquinelli's section 2—615 motion to dismiss counts I, II and IV of the Association's complaint.

A section 2—615 motion attacks the sufficiency of a complaint for failure to state a cause of action upon which relief can be granted. 735 ILCS 5/2—615 (West 2002). On consideration of a section 2—615 motion, the trial court examines only (1) the facts apparent from the face of the complaint; (2) matters of which the court may take judicial notice; and (3) judicial admissions in the record. *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110, 115, 660 N.E.2d 863 (1995). Exhibits attached to the complaint must also be considered, and where inconsistent, exhibits control over the factual allegations of the pleading. Matters of proof are not to be considered in examining a motion to dismiss pursuant to section 2—615. *Lipinski v. Martin J. Kelly Oldsmobile, Inc.*, 325 Ill. App. 3d 1139, 759 N.E.2d 66 (2001).

The record shows that the trial court did not rule on Pasquinelli's section 2—615 motion after entering the order staying counts I, II and IV. Therefore, the section 2—615 motion to dismiss remains pending. Having concluded that counts I, II and IV are not properly subject to arbitration, we hold as follows: (1) the stay that operates as an injunction preventing the Association from proceeding with its case is hereby vacated; and (2) this matter is remanded to the trial court to allow the Association to amend its complaint and thereafter address Pasquinelli's section 2—615 motion to dismiss.

For all of the reasons stated above, we reverse the judgment of the trial court, vacate the stay order, and remand this matter for further proceedings consistent with this opinion.

Reversed and remanded.

GALLAGHER and NEVILLE, JJ., concur.