FIFTH DIVISION
March 12, 2010

No. 1-09-1988

| | | |
|---|---|---|
| CAROL S. MARKS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 09 L 1468 |
| | ) | |
| LAWRENCE M. BOBER, an Individual, and | ) | |
| RSM McGLADREY, INC., a Delaware | ) | |
| Corporation, | ) | The Honorable |
| | ) | Dennis J. Burke, |
| Defendant-Appellants. | ) | Judge Presiding. |

JUSTICE LAVIN delivered the opinion of the court:

In this appeal, we consider whether an arbitration clause in a contract for narrowly described accounting services would apply to disputes that arose from subsequent investment advice services that were not mentioned in the retainer contract. Carol Marks alleged that she entered into a contract with Lawrence Bober, a managing director of RSM McGladrey, Inc. (McGladrey), to help manage accounting for various investment accounts she held. Marks also alleged that subsequently she later entered into a separate, oral investment advisory agreement with defendants. Her lack of satisfaction with those services (but not the accounting work) led her to file suit. Defendants sought to compel arbitration of the present dispute pursuant to the terms of the initial contract for accounting services. This is an interlocutory appeal from the circuit court's denial of defendants' petition to compel arbitration. For the reasons detailed below, we affirm the circuit court's order denying defendants' petition to compel arbitration and remand this matter to the circuit court for further proceedings.

## BACKGROUND

In February 2006, Marks met Bober while looking for help managing accounting for various investments. On February 21, 2006, Bober sent Marks a letter outlining the business proposal they had discussed in their meeting. Bober wrote that he and Marks had discussed "the capabilities of [McGladrey's] reporting software service which is formally known as 'Portfolio Reporting Services' ('PRS')." Bober explained to Marks that McGladrey would "enter security positions as of December 31, 2005 and related monthly activity of [her] assets beginning January 1, 2006." Bober continued, "[McGladrey] will reconcile all accounts and perform procedures to verify that the custodians have properly accounted for income and expenses. On a quarterly basis, [McGladrey] will provide [Marks] with various reports." Bober asked Marks to sign the enclosed letter if she chose to engage McGladrey in PRS services.

On March 31, 2006, Bober sent Marks a second letter (the Engagement Letter) outlining the terms of their engagement for Portfolio Reporting Solutions (PRS) services. The Engagement Letter included a "Scope of Engagement" clause, which read, "[McGladrey is] being engaged to perform the services described in [their] letter of February 21, 2006." The Engagement Letter included a "Professional Judgment" clause, which provided, "[McGladrey] will use [its] professional judgment in applying tax, accounting, investment or other rules applicable to this engagement." The Engagement Letter also provided a "Binding Arbitration" clause, which provided, "In the event that a dispute arises at any time between RSM MCGLADREY and [Marks] that cannot be resolved through discussion or mediation, [Marks] agree[s] to submit to binding arbitration under the commercial arbitration rules of the American Arbitration

2

Association." Marks executed this agreement on April 19, 2006.

Throughout the remainder of that year, Marks alleged that defendants failed to implement the PRS services from the Engagement Letter, and instead used a "bait and switch" approach to solicit Marks to invest in various securities. According to Marks, Bober began providing her with investment advisory services, actively sought new investment opportunities, and acted as broker-dealer on her behalf by putting together securities purchases. Marks alleged that "nothing in the services being provided for accounting purposes as had been set forth in the engagement letter had anything to do with the investment and securities sales which Bober and McGladrey began to offer [her]." Further, "McGladrey charged [her] separately for these and emphasized that the investment advisory services it offered her were separate from the accounting services to be provided through the PRS program." Neither Bober nor McGladrey was registered with either the Securities and Exchange Commission or the State of Illinois to provide such services. The record does not indicate that Marks and defendants entered into a written contract covering the investment services.

The alleged damages in this dispute resulted from Bober's advice to Marks that she should invest in an entity known as Lancelot Investors Fund II, L.P. (Lancelot). Marks invested approximately $500,000 with Lancelot, which in turn, invested that money in a hedge fund, Thousand Lakes, LLC (Thousand Lakes). According to Marks, this investment turned out to be a "disaster." After Marks had committed her investment, Thousand Lakes was exposed as a fraudulent "Ponzi" scheme, resulting in economic damage to Marks.

Marks filed a four-count complaint, alleging: (1) her investment in Lancelot was voidable

3

and that she was entitled to rescission of that investment contract; (2) Bober and McGladrey breached their fiduciary duties; (3) Bober and McGladrey orally agreed to provide investment advisory services and breached that contract by failing to investigate the Lancelot investment; and (4) Bober and McGladrey negligently represented themselves in holding out to be investment experts. Marks did not allege any violations of the defendants' accounting duties outlined in the Engagement Letter.

Upon being served in 2009, defendants petitioned the circuit court to compel arbitration pursuant to the arbitration clause in the Engagement Letter. Marks opposed arbitration, arguing that her complaint related to a separate, oral investment advisory agreement and services related to that agreement which did not fall within the arbitration provision in the Engagement Letter. Defendants responded that there was no separate investment advisory agreement and that plaintiff had not provided evidence of such.

On July 1, 2009, the circuit court, in a lengthy and lucid written order, denied defendants' petition to compel arbitration, finding that the investment advisory services were not within the scope of the Engagement Letter and the investment advisory services provided by defendants that allegedly resulted in the losses to Marks were covered by a separate oral contract between the parties. On July 24, 2009, defendants moved for reconsideration and included an affidavit of Bober explaining that he gleaned from the PRS service reports that Marks' investments were not being managed efficiently. Bober stated that he raised those concerns with Marks and facilitated appointments between Marks and other financial advisors, who eventually recommended Lancelot. Bober explained that defendants did not provide investment advice and denied

recommending Lancelot as an investment. Bober attested that al the services provided to Marks "related to, and derived from, the initial [PRS] reports." The motion for reconsideration was denied on July 30, 2009, and this timely appeal followed.

On appeal, defendants contend that Marks' action should be stayed and arbitration compelled because Marks agreed to arbitrate disputes with defendants. Defendants assert that the alleged claims were within the broad scope of the arbitration agreement, and if there is any doubt as to the scope of the agreement, there is a presumption of arbitrability under the Federal Arbitration Act (the FAA) (9 U.S.C. §1 *et seq.* 2006).

ANALYSIS

We have jurisdiction over this appeal from an interlocutory order under Supreme Court Rule 307(a)(1) (188 Ill. 2d R. 307(a)(1)). *Bass v. SMG, Inc.,* 328 Ill. App. 3d 492, 496 (2002) (a motion to compel arbitration is analogous to a motion for injunctive relief). We review the circuit court's denial of defendants' petition to compel arbitration without an evidentiary hearing *de novo*. *Bass*, 328 Ill. App. 3d at 496.

The first issue is whether the circuit court acted properly in determining the arbitrability of the present dispute instead of submitting this issue to the arbitrator. In determining whether the circuit court acted properly, a threshold issue is what law governs the parties' agreement– the Illinois Uniform Arbitration Act (the Illinois Act) (710 ILCS 5/1 *et seq.* (West 2006)) or the FAA. *Yates v. Doctor's Associates, Inc.*, 193 Ill. App. 3d 431, 436 (1990); *Bahuriak v. Bill Kay Chrysler Plymouth, Inc.*, 337 Ill. App. 3d 714, 718 (2003) ("The law that is applied in determining whether the circuit court or an arbitrator initially decides whether a given claim is

1-09-1988

arbitrable makes a significant difference"). Under the Illinois Act, where the language of the arbitration agreement is clear and it is apparent that the dispute sought to be arbitrated falls within or outside the scope of the arbitration clause, the court should decide the arbitrability issue. *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr,* 124 Ill. 2d 435, 445 (1988). "[W]hen the language of an arbitration clause is broad and it is unclear whether the subject matter of the dispute falls within the scope of [the] arbitration agreement, the question of substantive arbitrability should initially be decided by the arbitrator." *Donaldson,* 124 Ill. 2d at 447-48. Under the FAA, "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 649, 89 L. Ed. 2d 648, 656, 106 S. Ct. 1415, 1418 (1986).

Defendants filed their petition to compel arbitration under the FAA. Plaintiff's opposition to the petition did not present any issues under the Illinois Act. The circuit court's order denying defendants' petition did not refer to the Illinois Act and cites only the FAA. Because neither party mentioned the Illinois Act before the circuit court, the circuit court acted properly in determining the arbitrability under the FAA. Because neither party presented the circuit court with the question of whether the FAA or Illinois Act applies, we believe this issue has been forfeited, and we will not apply the Illinois Act for the first time in this litigation. *Yates*, 193 Ill. App. 3d at 437; *Tortoriello v. Gerald Nissan of North Aurora, Inc.*, 379 Ill. App. 3d 214, 226 (2008). We hasten to add, however, that application of the Illinois Act would lead us to the same conclusion, because we find that the circuit court properly determined the arbitrability of the present dispute

6

1-09-1988

since Marks' allegations clearly fall outside the scope of the services specifically mentioned in the Engagement Letter.

The next issue is whether Marks' allegations fall within the ambit of the arbitration clause provided by the Engagement Letter. Because neither party contests the validity of the Engagement Letter, our analysis is confined to determining whether the Engagement Letter's arbitration clause encompasses the allegations of the present dispute. To do so, we apply the principles set forth by the Supreme Court in *AT&T*.

In *AT&T*, the Supreme Court highlighted four principles in determining whether parties to a collective bargaining agreement intended to arbitrate grievances concerning layoffs predicated on a "lack of work" determination by the company. *AT&T,* 475 U.S. 643, 89 L. Ed. 2d 648, 106 S. Ct. 1415. The Supreme Court set forth the following four principles: (1) arbitration is a matter of contract and a party cannot be required to submit any dispute to arbitration which he has not agreed so to submit; (2) unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court and not the arbitrator; (3) a court is not to rule on the potential merits of the underlying claims when deciding whether the parties have agreed to submit a particular dispute to arbitration; and (4) an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *AT&T*, 475 U.S. at 648-50, 89 L. Ed. 2d at 655-57, 106 S. Ct. at 1418-19. Applying these principles, the Supreme Court held that it was the trial court's "duty to interpret the agreement and to determine whether the parties intended to arbitrate grievances concerning

layoffs predicated on a 'lack of work' determination by the Company." *AT&T*, 475 U.S. at 651, 89 L. Ed. 2d at 657, 106 S. Ct. at 1420.

In *Johnson v. Noble*, 240 Ill. App. 3d 731, 732-33 (1992), the plaintiff brought an action against the defendants on various grounds, including breach of contract and breach of fiduciary duties. The complaint alleged that there were two contracts between the parties, one oral and one written. *Johnson*, 240 Ill. App. 3d at 732. The plaintiff alleged that the breach of contract and fiduciary duty counts emanated from the alleged oral agreement, which did not contain the arbitration clause. *Johnson*, 240 Ill. App. 3d at 732. Defendants sought to compel arbitration pursuant to the FAA on the breach of contract and breach of fiduciary duty counts, which was denied by the trial court. *Johnson*, 240 Ill. App. 3d at 732. The appellate court affirmed, applying the law set forth by our supreme court in *Donaldson*, 124 Ill. 2d at 445 ("if it is apparent that the issue sought to be arbitrated is not within the ambit of the arbitration clause, the court should decide the arbitrability issue in favor of the opposing party, because there is no agreement to arbitrate"). The appellate court held that the breach of contract and breach of fiduciary duty claims were not within the ambit of the arbitration clause because "[t]he arbitration clause arose in a contract entered into between the same parties subsequent to the oral agreement and independent of it." *Johnson*, 240 Ill. App. 3d at 734-35.

In *Board of Managers of Chestnut Hills Condominium Ass'n. v. Pasquinelli, Inc.*, 354 Ill. App. 3d 749 (2004), a condominium association sued a developer alleging various breach of contract and breach of warranty claims. The developer moved to stay the proceedings pending submission of all claims to arbitration. *Pasquinelli*, 354 Ill. App. 3d at 750. The circuit court

dismissed one claim and stayed the remaining claims pending arbitration. *Pasquinelli*, 354 Ill. App. 3d at 750. The appellate court reversed the circuit court's decision, holding that the association's claims were not subject to arbitration because the factual allegations of the plaintiff's complaint sought redress for a series of defects that were not covered under the arbitration agreement. *Pasquinelli*, 354 Ill. App. 3d at 757. The court explained, "Parties to an agreement are bound to arbitrate only those issues they have agreed to arbitrate, as shown by the clear language of the agreement and their intentions expressed in that language, and that an arbitration agreement will not be extended by construction or implication." *Pasquinelli*, 354 Ill. App. 3d at 754-55.

We conclude that the allegations in Marks' complaint do not fall within the scope of the arbitration clause in the Engagement Letter and the circuit court properly denied defendants' petition to compel arbitration. Marks alleged that she entered into two distinct contracts with defendants. The first contract (the Engagement Letter) was for PRS software services. These services, as it was explained to Marks, were designed to monitor security positions and related monthly activity of Marks' assets, reconcile all accounts and verify that the custodians had properly accounted for income and expenses, and provide Marks with various quarterly reports. The PRS services described in the Engagement Letter did not mention or contemplate investment advisory services. It was this first contract that contained the arbitration clause.

The second contract was an oral agreement for investment services, where Marks alleged that she agreed to pay Bober a separate fee "to provide investment advisory services and to find investments and arrange for their sale to her." The allegations in Marks' complaint arose from

this second contract for investment services. Marks was not bound to submit any dispute that arose out of this second agreement to arbitration since those disputes would not be covered by the original Engagement Letter.

Despite defendants' assertion that the arbitration clause is broad and applies to any dispute arising between the parties, we will not extend the clear intention of the parties "by construction or implication" *Pasquinelli*, 354 Ill. App. 3d at 755. The factual allegations of Marks' complaint seeks redress for improper investment advice which was not covered in the Engagement Letter. Even though the allegations concern the same parties, the initial agreement between the parties did not contemplate Bober providing Marks with investment advice. Even the "Professional Judgment" clause relied upon by defendants limits the services provided to "tax, accounting, investment or other rules applicable to this engagement." The limiting language, "to this engagement," reveals that Marks and defendants only intended to contract for accounting services as outlined in the aforementioned communications. Therefore, we hold that Marks' allegations fall outside the scope of the arbitration clause and may be litigated outside the arbitration process.

## CONCLUSION

We affirm the circuit court's order denying defendants' petition to compel arbitration and remand to the circuit court for further proceedings.

Affirmed.

TOOMIN, P.J., and HOWSE, J., concur.

10

| Please Use Following Form: | REPORTER OF DECISIONS – ILLINOIS APPELLATE COURT (Front Sheet to be Attached to Each Case) |
|---|---|
| Complete TITLE of Case | CAROL S. MARKS,  Plaintiff-Appellee,  v.  LAWRENCE M. BOBER, an Individual, and RSM McGLADREY, INC., a Delaware Corporation,  Defendant-Appellants. |
| Docket No.  COURT  Opinion Filed | Nos. 1-09-1988 Appellate Court of Illinois First District, FIFTH Division  March 12, 2010 (Give month, day and year) |
| JUSTICES | JUSTICE LAVIN delivered the opinion of the court:  Toomin, P.J., and Howse, J., concur [s]  dissent[s] |
| APPEAL from the Circuit Ct. of Cook County, Law Div. | Lower Court and Trial Judge(s) in form indicated in the margin:  The Honorable Dennis Burke, , Judge Presiding. |
| For APPELLANTS, John Doe, of Chicago.  For APPELLEES, Smith and Smith of Chicago, Joseph Brown, (of Counsel)  Also add attorneys for third-party appellants or appellees. | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel. Indicate the word NONE if not represented.  Attorney for Defendant-**Appellants**: Bober and RSM McGladrey — Williams Montgomery & John Ltd. 20 N. Wacker Drive Suite 2100 Chicago, IL 60606 Phone 312.443.3200  Attorneys for **Plaintiff-Appellee:** Carol Marks — Vanasco Genelly & Miller 33 N. LaSalle St. Suite 2200 Chicago, IL 60602 Phone: 312.786.5100 |